United States District Court
Southern District of Texas
**ENTERED**
January 06, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Cori Alexander Scherer, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-00449 |
| | § | |
| BOK Financial Corporation, and BOKF, N.A. | § | |
| d/b/a Bank of Texas, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before this Court is Plaintiff Cori Alexandra Scherer's ("Plaintiff" or "Scherer") Motion for Partial Summary Judgment on Defendants BOK Financial Corporation ("BOK") and BOKF, N.A. d/b/a Bank of Texas' ("BOKF") (collectively the "Defendants") affirmative defenses. (Doc. No. 26). The Defendants responded in opposition. (Doc. No. 37). After considering the law and the parties' motions, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment. (Doc. No. 26).

### I. Background

This is a wage dispute case in which the Plaintiff seeks alleged unpaid overtime wages as well as unpaid commissions from the Defendants. Plaintiff worked for Defendants, performing the duties of a typical mortgage loan officer. Plaintiff claims that she worked a significant number of overtime hours during each workweek of her employment, but that she did not receive payment for those hours. Additionally, Plaintiff originally alleged that she originated four loan refinancings prior to leaving Defendants' employment, but that Defendants refused her to pay her commissions owed under their agreement.

1

For that reason, Plaintiffs filed this action against Defendants, alleging a Fair Labor Standards Act ("FLSA") violation as to the unpaid overtime wages, a breach of contract action for the commissions earned and not received, and, in the alternative to the breach of contract claim, a quantum meriut claim for the commissions. BOK and BOKF filed separate Answers to Plaintiff's First Amended Original Complaint. (Docs. No. 14 and 12). In their respective Answers, Defendants asserted numerous affirmative defenses. (*See* Docs. No. 12 and 14). Plaintiff has now brought this Motion for Partial Summary Judgment, challenging several of Defendants' mutual affirmative defenses.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in

favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Analysis

In response to Plaintiff's Motion, Defendants agree that it will not pursue certain defenses in this litigation—"mitigation, waiver, discharge, abandonment, release, de minimis, preliminary/postliminary activities, justification, unclean hands, and accord and satisfaction." (Doc. No. 37 at 1). Consequently, summary judgment is **GRANTED** on these issues. Plaintiff also moved for summary judgment on Defendants' contentions regarding flexible workweek, reliance on regulatory publications and/or case law, and FLSA credits, but Defendants did not address the defenses. Since Defendants did not address the defenses, they have not met their burden of producing sufficient evidence to create a genuine issue of material fact as to those defenses. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir.2002) (if a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.). Therefore, the Court **GRANTS** summary judgment as to these defenses as well.

Defendants do, however, contest Plaintiff's Motion concerning five defenses: (i) the outside sales exemption, (ii) offset, (iii) estoppel, (iv) payment, and (v) quantum meruit. The Court will address each in turn.

### *1. Outside Sales Exemption*

Plaintiff urges the Court to grant summary judgment as to Defendants' FLSA exemption affirmative defense. In particular, Plaintiff argues "due to the complete lack of competent summary judgment evidence pertaining to any FLSA exemption," the "vague defense" cannot survive. (Doc.

3

No. 26 at 10). Defendants respond, arguing the summary judgment evidence shows that Plaintiff performed the duties of outside sales. (Doc. No. 37 at 1).

The FLSA requires that employees be compensated at a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1). It also requires employers pay employees at one-and-a-half times their normal wages for hours worked in excess of forty per week. *Id.* § 207(a). The FLSA requirements, however, do not apply to all workers. *See id.* § 213. At issue in this case is the FLSA exemption for workers "employed… in the capacity of outside salesm[e]n." *Id.* at § 213(a)(1). The logic behind the outside sales exemption is that "[s]uch a salesman, to a great extent works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates." *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). An outside salesmen is not entitled to overtime because "[a]n outside salesman's extra compensation comes in the form of commissions, not overtime, and because most of the salesman's work is performed away from the employer's place of business, the employer often has no way of knowing how many hours an outside salesman works." *Id.*

Congress did not define "outside salesman," but it authorized the Department of Labor to promulgate regulations defining the term. 29 U.S.C. §213(a)(1). Under the federal regulations, an employee employed in the capacity of outside salesman means an employee,

> (1) Whose primary duty is:
>     (i) making sales within the meaning of section [203(k) of the FLSA], or
>     (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a)(1)–(2). Thus, the question whether the outside salesman exemption applies is two-part. The first part asks if the employee's primary duty is to make sales, and the second part

4

inquires as to whether the employee customarily and regularly engaged away from the employer's business.

Accordingly, the Court must first determine if the Plaintiff's primary duty was to make sales. Under the Department of Labor regulations, "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." *Id.* § 541.700(a). Sales is defined as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k); *see e.g.,* 29 C.F.R. § 541.504(d)(3) (Employees engaged in activities intended to promote sales by customers such as "placing point-of-sale and other advertising materials, price stamping commodities, arranging merchandise on shelves, in coolers or cabinets, rotating stock according to date, and cleaning and otherwise servicing display cases," do not qualify for the exemption, "unless such work is in furtherance of the [employee]'s own sales efforts."). Defendants point to Plaintiff's deposition testimony as evidence that she was an outside salesman. In her deposition Plaintiff stated that her job duties "switched more so from being Carol's assistant to more originating. So that meant [Plaintiff] was meeting with clients, generating business, hosting events, taking meetings, lunch and learn, and originating loans." (Doc. No. 28-23 at 39). Further, Plaintiff earned commissions on loan production. (See Doc. No. 28-23 at 25). Additionally, according to the Plaintiff's own admission, her primary duty while working for Defendants was sales. (Doc. No. 28-23 at 117).[1] There is sufficient evidence of this element to create a genuine issue of material fact. *Compare with King v. Stevenson Beer Distrib. Co.,* 11 F. Supp. 3d 772, 786 (S.D. Tex. 2014) ("Although King spent much of his time in the field, nothing in the record indicates that he received any commissions or that his compensation was affected by

---

[1] In her deposition, the attorney asked Plaintiff, "was your primary duty for Bank of Texas sales?" In response, Plaintiff answered, "yes." (Doc. No. 28-25 at 117).

5

sales in anyway. As such, the Court finds that the facts at issue are not consistent with the spirit and intent of the exemption.").

The next question is whether Defendants presented competent summary judgment evidence that shows Plaintiff customarily and regularly engaged in sales away from the employer's place or places of business. "Customarily and regularly" means "a frequency that must be greater than occasional but which, of course, may be less than constant" and "[t]asks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701; *Martinez v. Superior HealthPlan, Inc.*, 371 F. Supp. 3d 370, 382 (W.D. Tex. 2019).

Plaintiff worked for the Defendants before and during the COVID-19 pandemic. The Court recognizes that many people worked from home and engaged in business away from the employer's place of business during the beginning of COVID-19, so the Court does not consider evidence of Plaintiff's work outside the employer's place of business during that time to be conclusive.[2] That said, the Court will look to the evidence before the pandemic began to determine whether Plaintiff customarily and regularly engaged in sales away from the employer's place of business.

Before the COVID-19 pandemic began, Plaintiff regularly met with clients, realtors, and title representatives outside the Defendants' physical location. (*See* Doc. No. 28-23 at 38). In fact, in her deposition, Plaintiff admitted that she more frequently met with clients outside the office than inside the office. (Doc. No. 28-23 at 38). Plaintiff stated she met with "centers of influence" (defined as realtors and title representatives) "about once a month." (Doc. No. 28-23 at 37). In her

---

[2] During the beginning of the COVID-19 pandemic, (from March 15, 2020 to the end of 2020) Plaintiff went to the office "very few times." (Doc. No. 28-23 at 16). That said, Plaintiff did meet with various clients, relators, and title representatives during that time period. She met with those individuals, on average, a couple times per month at coffee shops and restaurants. (Doc. No. 28-23 at 19).

deposition, she was not asked, and she did not state, how frequently she met with clients outside the office. Considering the information presented, and accounting for the fact that much of her employment took place during the COVID-19 pandemic, the Court finds the Defendants' evidence sufficient to create a genuine issue of material fact as to whether Plaintiff customarily and regularly performed sales work away from her employer's office. *Martinez*, 371 F. Supp. 3d at 382 (the court found that Plaintiffs customarily and regularly performed sales work away from their employer's office when they spent every or virtually every weekday in sales appointments away from the office).

For the reasons explained, the Court **DENIES** Plaintiff's Motion as it relates to FLSA outside sales exemption.

### *2. Offset*

The next challenged affirmative defense the Plaintiff seeks a judgment on is offset. The Plaintiff argues that the Fifth Circuit "has unequivocally rejected the notion that a defendant is entitled to a set-off or offset against back pay awarded under the FLSA." (Doc. No. 26 at 2). Conversely, Defendants claim that Plaintiff is incorrect, and they are entitled to offset because they have "presented summary judgment evidence that (i) Plaintiff falsified her time sheets so that (ii) BOKF paid her for time that was not actually devoted to BOKF." (Doc. No. 37 at 6).

In deciding this issue, the Court takes into account the fact that the Fifth Circuit has applied offsets in a limited number of cases. One case where the Fifth Circuit allowed an offset was *Singer v. City of Waco*. *See Singer v. City of Waco*, 324 F.3d 813 (5th Cir.2003). In that case, firefighter sued Firefighters sued the City because the City's method of calculating overtime compensation resulted in deficiencies. *Id.* at 826. The City's methods, however, also resulted in considerable overpayments in other periods. *Id.* The court allowed the City to offset those overpayments with

7

the underpayments. *Id.* Since *Singer*, however, the Fifth Circuit has clarified that the longstanding prohibition of offsets in FLSA cases is the rule and the *Singer* case is an exception. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1043 (5th Cir. 2010). The Fifth Circuit only allow offsets when the money paid represents obligations already fulfilled, such as wage payments or advances. *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 743 (5th Cir. 2010).

In this case, Defendants wish to offset the money they owe Plaintiff, if any, with some of the money they already paid Plaintiff, which they claim was not actually earned. In support of its argument, Defendants state, "the Fifth Circuit at least allow the offset (sometimes labelled as a counterclaim) issue to be presented to the jury." (Doc. No. 37 at 14). The Defendants go on to cite numerous cases where courts allowed counterclaims for offset in cases where there was theft of services and fraud. *E.g. Hernandez v. ARC Trading Co.*, No. 3:17-CV-2057-BN, 2018 WL 2017680 (N.D. Tex. May 1, 2018).

Here, the Defendants did not assert offset as a counterclaim. Rather, they asserted it as an affirmative defense. While in most cases the Defendants raise this issue as a counterclaim, the Court believes that the Defendants may assert it as an affirmative defense. The case law is clear, an employee is not to be compensated for their overtime work if they are "found to have worked unauthorized overtime or falsified records to create a cause of action." *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) (*citing Burry v. National Trailer*, 239 F.Supp. 85 (E.D. Tenn. 1963) ("if an employee is keeping his own time sheets secretly … and keeps them for the purpose of committing a fraud on the employer or to trick the employer in paying him overtime wages, he is precluded from recovering overtime wages under such circumstances. No person should ever be permitted to profit from his own fraud."). Further, the claims here directly relate to Plaintiff's wage claims, such as they challenge the amount of overtime hours worked and

8

wages due. For that reason, the Court holds that this is a valid affirmative defense to be presented to the jury so long as the Defendants have supported their defense with valid summary judgment evidence.

Defendants again point to the Plaintiff's deposition as evidence. In relevant part, the Defendants point to one of Plaintiff's statements in her deposition: "I don't think I accurately reported my overtime throughout my employment." (Doc. No. 39-23 at 121). Plaintiff continues, explaining, "I estimated [my overtime hours] and would typically underestimate, again, to avoid being scrutinized by my employer when I knew, from the discussion that I had had, that it was looked down upon." (Doc. No. 39-23 at 122–23). Further, Plaintiff admits that some of her entries are no accurate. (Doc. No.39-23 at 187).

The Court acknowledges Plaintiff could have meant she was inaccurate either way— exaggerating upwards or downwards – but since she does not specify (besides saying she would "*typically* underestimate"), the Court finds that there is sufficient evidence to create and genuine issue of material fact. The Court **DENIES** Plaintiff's motion for summary judgment on Defendants' offset defense.

### *3. Estoppel*

Plaintiff also seeks judgment on Defendants' estoppel defense. Plaintiff asserts that "[e]quitable defenses such as ... estoppel ... are generally unavailable in FLSA cases." (Doc. No. 26 at 14). Defendants responds, "[t]o the contrary, a limited exception to the general rule applies," and the exception applies in this case. (*See* Doc. No. 37 at 9).

Courts around the country have expressed reservations as to the availability of estoppel as an affirmative defense to a claim brought under the FLSA. *See Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir.1959); *Burry v. Nat'l Trailer Convoy, Inc.*, 338 F.2d 422, 426–27

9

(6 th Cir.1964); *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir.1951); *see Tran v. Thai*, Civil Action No. H–08–3650, 2010 WL 5232944, at *7 (S.D.Tex. Dec.16, 2010). The Fifth Circuit, however, has permitted an employer to rely on the estoppel defense in the FLSA context. *See e.g., Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir.1972). In *Brumbelow v. Quality Mills, Inc.*, the Fifth Circuit held a plaintiff was estopped from recovering alleged overtime hours. *Id.* In that case, there was no evidence that the employer required or encouraged entry of false hours or that the employer knew or should have known the plaintiff was unable to perform the work within normal hours. *Id.* It is important to note the Fifth Circuit decided the issue on the "narrow facts" of the particular case. *Id.*

Considering *Brumbelow v. Quality Mills, Inc.*, an estoppel defense in the FLSA context turns on the particular facts of the case and the knowledge the party had at the time of the alleged violation. As evidence that they are entitled to an estoppel defense, Defendants point to Plaintiff's deposition testimony. Defendants also direct the Court to an email from Bill North, the Sernior Vice President and Regional Manager at BOKF. That email was sent to the Houston sales group, which is the group Plaintiff worked in. The email stated, "[t]eam, I need your help. We must ensure you are getting paid properly for time worked. For this reason you must complete your time card…lease see attached training doc, training link below, your manager, or Laura calls for assistance." (Doc. No. 23-14). The email also provided, "[e]mployees are responsible for accurately reflecting and tracking time worked in UltiTime and attendance." (Doc. No. 23-14). As additional evidence that Defendants did not have knowledge of Plaintiff's incorrect reporting, Defendants cite Plaintiff's deposition testimony. In her deposition Defendants' attorney asked her, "[d]id anyone in payroll ever suggest that you work off the clock?" (Doc. No. 39-23 at 86). She answered, "no." (Doc. No. 39-23 at 86). Also during her deposition, she acknowledged that she

10

knew Defendants were using her time entries to complete the pay statements, she knew Defendants were relying on her time entries, she inaccurately reported her overtime, and she was unsure how BOK was supposed to know that she was not reporting certain hours. (Doc. No. 39-23 at 85-86, 121, 204). Further, as Defendants point out, Plaintiff's direct supervisor submitted a sworn declaration in which she stated she "always encouraged [her] Loan Officers to record their overtime." (Doc. 23-1 at 4).

There is sufficient evidence to create a genuine issue of material fact as to the estoppel defense. Thus, the Court **DENIES** Plaintiff's Motion on Defendants' estoppel affirmative defense.

### *4. Payment*

The next affirmative defense that Plaintiff moves for summary judgment on is payment. In her Motion, Plaintiff addresses payment in the FLSA context. Defendants argue that Plaintiff "totally ignores the relevant of BOKF's affirmative defenses to Plaintiff's state law claim of breach of contract concerning the Four Loans for which she demanded payment." (Doc. No. 26 at 20).

According to her Amended Complaint, Defendants failed to pay Plaintiff her commission earned on Four Loans that she originated before resigning. (*See* Doc. No. 9 at 12). Since the lawsuit has been filed, however, Defendants have paid Plaintiff the complained of commission. (Doc. No. 39-22). Since Plaintiff accepted payment, her breach of contract claims concerning the commission are now **MOOT**. Defendants only seek to assert the "payment defense to the Four Loan claim." (Doc. No. 37 at 14). As such, the Court **DENIES** Plaintiff's Motion as to payment defense.

### *5. Full Performance*

The last contested defense is full performance. Like payment, Defendants contend that the full performance defense is relevant to Plaintiff's quantum meruit claim. As discussed, since filing her lawsuit, Defendants have paid Plaintiff (and she has accepted payment) for the commission

owed on the Four Loans addressed in the Amended Complaint. (Doc. No. 9). As such, Plaintiff no longer has a valid quantum meruit claim. Since Defendants only discuss applying this defense in the quantum meruit context, the Court **DENIES** Plaintiff's Motion as to the full performance defense since it is **MOOT**.

## IV. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Cori Alexandra Scherer's Motion for **Partial** Summary Judgment on Defendants affirmative defenses. (Doc. No. 26). The Court **GRANTS** the Motion as to the affirmative defenses of mitigation, waiver, discharge, abandonment, release, de minimis, preliminary/postliminary activities, justification, unclean hands, accord and satisfaction, credits under the FLSA, flexible workweek, and reliance on regulatory publications and/or case law. The Court **DENIES** the Motion as to the outside sales exemption, offset, and estoppel defenses. Further, the Motion as to the defenses concerning the commissions due on the Four Loans (payment and full performance) is **DENIED** as **MOOT**.

Signed at Houston, Texas, this ___6___ day of January, 2023.

Andrew S. Hanen
United States District Judge